# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Earl Allen Northrop, Jr.,

        Petitioner,    Case No. 17-11213

v.                        Judith E. Levy
                         United States District Judge

Connie Horton,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1] AND DENYING A CERTIFICATE OF APPEALABILITY

     Earl Allen Northrop, Jr., a Michigan prisoner who is represented by counsel, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his Sanilac Circuit Court jury trial conviction of three counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a), (b)(ii); kidnapping ("CSC I"), Mich. Comp. Laws § 750.349(1)(c); three counts of second-degree criminal sexual conduct ("CSC II"), Mich. Comp. Laws § 750.520c(1)(a), (b)(ii); and second-degree child abuse, Mich. Comp. Laws § 750.136b(3).

Petitioner was sentenced as a fourth-time habitual felony offender to concurrent terms of forty to sixty years of imprisonment for each of the CSC I convictions, thirty to fifty years of imprisonment for the kidnapping conviction, nineteen to thirty-five years of imprisonment for each of the CSC II convictions, and nineteen to thirty-five years of imprisonment for the second-degree child abuse conviction.

Petitioner raises four claims: (1) ineffective assistance of trial counsel ("IAC"); (2) his involuntary statement to police was erroneously admitted at trial and trial counsel was ineffective for failing to object to its introduction; (3) evidence of his attempted flight was improperly admitted at trial; and (4) the cumulative effect of the foregoing errors rendered his trial fundamentally unfair. However, because petitioner procedurally defaulted his claims and he neglected to raise an argument excusing his default, he is not entitled to habeas relief.

I. **Background**

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

This appeal arises from an incident on February 13, 2012. According to the testimony of the complainant,[1] on that date, she was home from school with the defendant. The complainant testified that she was fully dressed and watching television when defendant approached her and tried to put duct tape on her wrists and feet. Further, she testified that she fought with defendant and he attempted to duct tape the complainant to the bed and she grabbed the tape and would not let go until he let her get up from the bed. The complainant then went into the kitchen to get some water and she testified that defendant approached her with the duct tape and told her to stop resisting because he did not want to have to throw her on the ground. The complainant and defendant continued to fight until defendant picked up the complainant and took her to an upstairs bedroom.

After fighting with the defendant and trying to fend him off, the complainant next complied with defendant's directions to lie on the bed. Defendant then wrapped her legs together in duct tape from her ankles to her knees, and taped her wrists together. Defendant then tied the complainant's socks together and put them in her mouth, after which he told the complainant that he was going to kill her and the rest of her family members.

According to the complainant, defendant went downstairs and the complainant heard a spray, and when defendant returned he attempted to put a rag to her nose. The complainant spit out the sock and told defendant to stop while rolling in circles. At trial, the complainant identified what looked like the rag in a picture of the closet in the family room upstairs.

---

[1] Complainant is petitioner's daughter, who was fifteen years old at the time of these events. (Dkt. 6-18 at 1.)

3

As the complainant was in the bed, she testified that she begged defendant to remove the duct tape. After defendant took the tape off, he followed the complainant to the downstairs bathroom. The complainant testified that she did not attempt to flee because defendant would have chased her. Defendant then began asking the complainant to have sex with him, stating that he waited his whole life to do so. Defendant pushed the complainant onto the bed and removed their clothes. Defendant removed her underwear, licked his fingers and rubbed her vagina, and then licked her vagina. Defendant attempted a couple times without success to put his penis in her vagina. Defendant was unable to get his penis inside her, and she told him to stop and left to go to the bathroom and get a drink.

Subsequently, defendant followed the complainant onto the couch and told her he was "not done yet." Defendant then pulled her off the couch and onto the bed. Defendant then put on a condom and put his penis in her vagina for about 10 minutes. Thereafter, the complainant testified that she went into the bathroom and asked whether she could again get dressed. Defendant responded that she could because he was "not in the mood." The complainant testified that she put on the same clothes she previously wore, and further stated there was no blood in her underwear, but she urinated blood while in the bathroom.

Defendant remained in close proximity to the complainant after the sexual assault, asking whether he should leave, kill himself, or if she hated him. The complainant then testified that defendant put the sheets by the washing machine in the basement and then her mother came home.

The complainant's mother testified that when she arrived home, she saw defendant walk out of the bathroom and appeared disheveled, leading her to conclude he was

intoxicated. The complainant and her mother then went to pick up one of the complainant's siblings and the complainant began crying in the car. When the complainant's mother demanded that the complainant tell her what was wrong, the complainant quietly twice said that "he" (defendant) raped her.

The complainant's mother then took the complainant and other family members to the police station, the hospital, and the Child Advocacy Center, where the complainant was examined and her underwear collected.

An examination noted no injury in the vaginal area and her hymen remained intact. The examination did not reveal injuries to the complainant's wrists or legs. The nurse who conducted the examination testified that of the eight 15-year-olds that she had examined in 2012, only two had injuries. The nurse also collected swabs from the complainant's vaginal vault, groin area, anal area, pubic area, mouth, smears from the vaginal and oral areas, and hair from her head and pubic area, as well as the complainant's jeans, sweatshirt, and bra. These items were then received by Michigan State Police Trooper Jeffery Rodgers.

On the evening of February 14, 2012, Rodgers testified that he returned to the residence to arrest defendant but no one answered the door. Rodgers located defendant's phone a quarter mile away in a field using GPS coordinates and by "pinging" the phone. Utilizing a dog, defendant was located in the residence and arrested.

Around 1:30 a.m. on February 14, 2012, Trooper Lizabeth Hunt assisted in executing a search warrant at defendant's residence. Hunt photographed a green rag in a common-area closet upstairs and a ball of duct tape under the complainant's bed and duct tape in her dresser. Hunt testified there were no sheets on the bed and no condom was found.

Trooper Rodgers assisted in searching defendant's residence and he recovered a bottle of absinthe liquor.

Michigan State Police Trooper Daniel Thompson took DNA swabs of defendant's mouth and penis on February 14, 2012. Michigan State Police forensic examiner Cassandra Campbell tested a sample swab from the inner thigh pubic area of the complainant and compared it with a sample from defendant. Due to a lack of DNA, Campbell was only able to test 3 of 11 locations on the "Y" chromosome, and determined that two locations matched defendant's sample and the third was not able to be determined. She explained that one of every two Caucasian males could have the same "Y" DNA markers. Accordingly, she testified, no conclusive determination could be made regarding whether defendant's DNA matched that of the sample taken off the complainant's body.

Michigan State Police forensic scientist Heather Clark tested samples from defendant and the complainant. A sample from the complainant's inner thigh pubic area indicated the DNA of two individuals consistent with a mixture of the complainant and an unidentified male donor. She further testified that defendant was not the major donor and the amount of material from the minor male donor was insufficient for comparison purposes. She also testified that only defendant's DNA was found on defendant's penile swab and that defendant's underwear contained his DNA mixed with two minor donors who were not able to be identified due to the small size of the sample.

Michigan State Police trace evidence examiner Troy Ernst examined the duct tape strips, bundles of fibers removed from the duct tape adhesive, and the complainant's sweatshirt. Ernst applied the duct tape to the left sleeve of the sweatshirt to investigate the fiber bundles that were removed to compare by microscopy, color, and fiber type to the evidence he received. Ernst did not notice any difference between the

sample and evidentiary fibers. Ernst concluded that the sweatshirt was a possible source of the fibers tested as well as other similar sweatshirts. Additionally, Michigan State Police fingerprint analyst Kathleen Boyer identified defendant's thumbprint on duct tape evidence.

At trial, one of the complainant's siblings identified a photo of his bedroom and stated that the items in the photo—a sock, underwear, a hand towel, a trash bag, a water bottle, and a tube shaped item—were not in the room when he was last there. The complainant's mother testified that when she returned to the residence she saw a washcloth upstairs that belonged in the kitchen or the wash. She denied that the complainant kept duct tape in her drawer, and identified a green multi-colored blanket found in the dryer as one often used by the complainant.

Galen Krawczak testified that he was defendant's friend and neighbor for five years. On the evening of February 13, 2012, Krawczak was out of town when defendant called him asking for a ride. Krawczak testified that defendant told him that something bad was going to happen and he needed a ride to Kentucky. According to Krawczak, defendant sounded drunk, and Krawczak told him to lie down and cool off. (FN 1: Defendant denied all of the allegations made by the victim. additionally, defendant testified that he did not recall telephoning Krawczak. He further contended that Krawczak "had something going on" with the victim's mother.)

Defendant testified that on February 13, 2012, the complainant's mother went to work and her siblings went to school. He denied insisting the complainant stay home from school because she previously wore make-up to school. Defendant testified he had a headache from the night-time cold medicine he took the night before and that he went to sleep and drank a beer and took Nyquil before the complainant's mother came home. Defendant stated that he

7

also drank peppermint schnapps and shots of absinthe alcohol on February 12, 2012, and finished the bottle of absinthe on February 14, 2012.

>Defendant stated that he did not interact with the complainant during the day, and could not have carried her up the stairs because he has back problems. Defendant denied using duct tape or sexually assaulting the complainant. Defendant stated that he had never used a condom.

>Defendant also denied telling a police officer that he punished his children by using duct tape. On rebuttal, a one minute and fifteen second portion of Hunt's recorded February 14 interview with defendant was played, during which defendant describes previously duct taping the children.

>Defendant stated that he had to visit the complainant's teachers and principal on almost a weekly basis because she made up stories about a teacher touching her breasts and butt, loving her, and wanting to impregnate her. The complainant denied these allegations, explaining that, while in seventh grade, she wrote a statement to the school office for her friends stating that a teacher looked down her friends' shirts. The complainant's mother also denied that the complainant's school ever called her about allegations she made about teachers.

*People v. Northrop*, No. 315972, 2014 Mich. App. LEXIS, at *1–10 (Ct. App. May 13, 2014).

Petitioner filed an appeal of right following his conviction and sentence. *Id.* at *1. Petitioner, who had retained counsel at trial also retained his trial counsel to represent him on direct appeal. On appeal,

8

petitioner argued that there was insufficient evidence "to support his convictions and that the jury's verdict was against the great weight of the evidence." *Id.*

On May 13, 2014, the Michigan Court of Appeals affirmed petitioner's convictions. *Id.* Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims, but it was denied by standard form order. *People v. Northrop*, 857 N.W.2d 37 (Mich. 2014) (Table).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising five claims, which are set forth verbatim from that motion:

> a. Mr. Northrop was denied the effective assistance of counsel and the right to present a defense guaranteed by the United States and Michigan Constitutions where trial defense counsel failed to investigate and present an essential expert witness, failed to present evidence of prior false allegations, and failed to seek school records. Mr. Northrop was denied the effective assistance of counsel on appeal by appellate counsel failing to raise these issues.
>
> b. The complainant's school records are likely to contain information that would have affected the outcome of Mr. Northrop's case, therefore this Court should turn over all school records to Mr. Northrop, or minimally, this Court should conduct an in camera review in accordance with *People v. Stanaway*, 446 Mich. 643; 521 N.W.2d 557 (1994).

9

> c. Mr. Northrop was denied a fair trial by the introduction of his involuntary statement as impeachment evidence and was denied his right to the effective assistance of counsel by his attorney's failure to move to suppress his statement or to object to its admission during trial. Mr. Northrop was denied the effective assistance of counsel on appeal by appellate counsel failing to raise the issue.
>
> d. The trial court violated Mr. Northrop's constitutional due process rights by allowing the prosecution to introduce evidence that Mr. Northrop attempted to flee the state. Mr. Northrop was denied the effective assistance of counsel on appeal by appellate counsel failing to raise the issue.
>
> e. The cumulative effect of the errors by Mr. Northrop's attorney denied Mr. Northrop a fair trial and significantly undermined the confidence in the reliability of the verdict.

(Dkt. 6-16 at 3–4.)

In an opinion dated March 4, 2016, the trial court denied the motion for relief from judgment, finding that the claims were barred from review by petitioner's failure to raise them on direct review and because they lacked merit. (Dkt. 6-18 at 4–5.) Petitioner appealed this decision, but the Michigan Court of Appeals denied his application for leave to appeal for "fail[ing] to establish that the trial court erred in denying his motion for relief from judgment." (Dkt. 6-20 at 1.) He then appealed to the

10

Michigan Supreme Court, which summarily denied his application for leave to appeal. *People v. Northrop*, 888 N.W.2d 107 (Mich. 2017) (Table).

Now, petitioner raises the same claims, though he formulates them as four, rather than five, claims. First, he argues that his trial counsel was ineffective when counsel failed to call a defense expert, failed to present evidence of prior false accusations by the complainant, and failed to seek the victim's school records. Second, his involuntary statement to police was erroneously admitted at trial and trial counsel was ineffective for failing to object to its introduction. Third, evidence of his attempted flight was improperly admitted at trial. And finally, the cumulative effect of the foregoing errors rendered his trial fundamentally unfair. In response, respondent argues that petitioner procedurally defaulted his claims in state post-conviction proceedings, and in the alternative, he fails on the merits under the applicable standard.

## II. <u>Legal Standard</u>

The Anti-terrorism and Effective Death Penalty Act ("AEDPA") limits the authority of a district court to grant habeas relief on a claim that was adjudicated on the merits by the state courts. *See* § 2254(d). A § 2254 petition may only be granted if the state court adjudication was

11

"contrary to" or resulted in an "unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "AEDPA sets forth a heavy burden for a petitioner to overcome." *Tibbetts v. Bradshaw*, 633 F.3d 436, 442 (6th Cir. 2011).

III. <u>Analysis</u>

Respondent argues that petitioner procedurally defaulted his claims under Michigan Court Rule 6.508(D)(3) on his motion for relief from judgment, a Michigan state post-conviction proceeding. (Dkt. 5 at 27–31.) When respondent, a state official, raises a procedural default defense, as here, the district court must address it before reaching the merits of a petitioner's habeas claims, especially when the procedural default question is clear. *Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018) ("However, where a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue.") (citing *Duyst v. Rapelje*, 483 F. App'x 36, 44–56 (6th Cir. 2012); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003)) (considering Rule 6.508(D)(3)). In this case, the procedural default

12

question is clear, as discussed *infra*, and so the Court considers it first.[2]

Because petitioner procedurally defaulted his claims in state post-conviction proceedings and now fails to show cause and actual prejudice, or a miscarriage of justice, he cannot avoid dismissal of his petition because of this default.

If a claim is not considered by a state court "due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000) (citing cases). A petitioner has procedurally defaulted when:

> (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an "adequate and independent" state ground foreclosing review of a federal constitutional claim.

---

[2] Even if the procedural default question were complicated and judicial economy weighed in favor of addressing petitioner's claims on the merits first, the Court would still resolve the claims against petitioner. *See Sheffield*, 731 F. App'x at 441 (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) (explaining that courts may avoid complex state law procedural questions and turn to the merits if they are resolvable against the petitioner to further judicial economy). Here, however, procedural default under Rule 6.508(D)(3) is governed by well-settled precedent, and so the Court heeds *Sheffield*.

13

*Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003). It is well-established that Rule 6.508(D)(3) satisfies the third element as an adequate and independent state ground. *E.g.*, *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012); *Willis*, 351 F.3d at 745. Petitioner has procedurally defaulted his claims because the two remaining elements are satisfied.

First, petitioner failed to comply with Rule 6.508(D)(3).[3] The rule states that all claims that could be brought on direct appeal must be raised on direct appeal. Mich. Ct. R. 6.508(D)(3); *see also Guilmette*, 624 F.3d at 291. This unmistakably includes trial IAC claims. *E.g.*, *Schwarzlose v. Waddell*, No. 18-2216, 2019 WL 257831, at *2 (6th Cir. Jan. 4, 2019); *Ivory v. Jackson*, 509 F.3d 284, 292–93 (6th Cir. 2007). Petitioner argues that he did not violate this rule (Dkt. 8 at 2), but provides no support for this assertion.

Moreover, the state trial court opinion shows that petitioner knew he had violated Rule 6.508(D)(3). Like federal habeas, a Michigan

---

[3] The parties appear to agree that the last reasoned state court decision is the state trial court's denial of petitioner's motion for relief from judgment. This is correct because the Michigan Supreme Court summarily denied petitioner's appeal of the denial of his motion for relief from judgment, *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), and because the Michigan appellate court only referred to Michigan Court Rule 6.508(D), *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2012) (en banc) (holding that Rule 6.508(D) alone is too ambiguous to be a reasoned state decision).

14

defendant seeking post-conviction review under 6.508(D) who failed to raise a claim at the appropriate time can avoid the application of the procedural rule by showing "good cause" and "actual prejudice." Mich. Ct. Rule 6.508(D)(3)(a) & (b). The state court opinion evaluated what it called petitioner's "good cause" and "actual prejudice" arguments. (Dkt. 1-10 at 4–5.) Although respondent did not file the briefs in support of and against petitioner's motion for relief from judgment, Rules Governing § 2254 Cases, Rule 5(d)(1)–(2), 28 U.S.C. foll. § 2254, the Court can infer from the opinion that petitioner made a good cause and actual prejudice argument. Petitioner would not have made such an argument unless he knew he was in violation of Rule 6.508(D)(3). An argument to the contrary now defies the state record.

Second, the state trial court enforced Rule 6.508(D)(3). First, the state trial court referenced "actual prejudice," which refers to the second requirement for evading the harsh consequences of Rule 6.508(D)(3)(b). (Dkt. 1-10 at 2.) Then, on the final page of its decision, the state trial court cited Rules 6.508(D)(3)(a) and (3)(b)(i), holding that petitioner had not shown good cause or actual prejudice that would permit his ineffective assistance of trial counsel claims to go forward. (*See id.* at 4–

15

5.) Again, there would be no reason for the state trial court to evaluate petitioner's good cause and actual prejudice argument unless it were applying Rule 6.508(D)(3).

Petitioner argues that the state trial court did not enforce Rule 6.508(D)(3) because it addressed the merits of the trial IAC claims (Dkt. 8 at 2), but this is a misunderstanding of the state court decision. To avoid the application of Rule 6.508(D)(3), the Court infers that petitioner argued he had good cause for not raising his trial IAC claims because he had ineffective assistance of appellate counsel ("appellate IAC"). (Dkt. 1-10 at 5.) To determine whether petitioner had good cause, i.e. constitutionally deficient appellate counsel, the state trial court examined his underlying trial IAC claims. If petitioner's underlying trial IAC claims were weak or lacked merit, there could be no appellate IAC for not raising those claims on direct appeal. *See, e.g.*, *Martin v. Mitchell*, 280 F.3d 594, 606 (6th Cir. 2002). The state court did not reach a decision on the merits of the trial IAC claims, but determined that petitioner had not shown appellate IAC that could serve as good cause for not applying Rule 6.508(D)(3); it rested its decision on procedural grounds. *See Schwarzlose*, 2019 WL 257831, at *2 ("[A]lthough the trial court analyzed

the merits of Schwarzlose's ineffective-assistance claims in reaching the ultimate conclusion that he procedurally defaulted the claims under Rule 6.508(D), 'when a state court relies on an independent procedural ground to deny relief, a discussion of the merits will not supersede the procedural bar to habeas relief.'" (quoting *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004))). Petitioner's argument that the state trial court did not enforce the state procedural bar disregards the posture of the state trial court's decision, as well as the nature of his own arguments in state court.

Only if petitioner shows cause and actual prejudice, or a miscarriage of justice, can he avoid the application of a procedural default in federal habeas. *Wainwright v. Sykes*, 433 U.S. 72, 84–87 (1977). Because petitioner's counsel ignored or fatally misinterpreted the state court's application of Rule 6.508(D)(3) in his post-conviction proceedings, counsel failed to put forth any argument that would excuse the default under *Wainwright*.

Although petitioner raised an appellate IAC claim in state court to avoid the state procedural default rule, which properly exhausted the claim, *Murray v. Carrier*, 477 U.S. 478, 489 (1986), he neglects to raise it here to avoid procedural default in federal habeas. But even if the Court

inferred from the trial IAC claims in the petition that petitioner was raising appellate IAC as cause, he does not show actual prejudice. There is nothing in the petitioner's briefs that could be construed as a showing of actual prejudice on appeal resulting from appellate counsel's performance. Therefore, the Court "decline[s] to waive the default." *Williams v. Anderson*, 460 F.3d 789, 808 (6th Cir. 2006). For these reasons, petitioner has procedurally default his claims and is not entitled to habeas relief.

## IV. <u>Certificate of Appealability</u>

Before petitioner may appeal, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). The substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). The Court finds that reasonable jurists could not debate whether he procedurally defaulted his claims given the state trial court opinion denying petitioner's motion for relief from judgment on procedural

18

grounds, and his failure to put forth any argument that would excuse his procedural default. Accordingly, petitioner is not entitled to a certificate of appealability.

## V. Conclusion

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED** and a certificate of appealability is **DENIED.**

IT IS SO ORDERED.

Dated: February 11, 2019  　　s/Judith E. Levy  
　Ann Arbor, Michigan　　　　JUDITH E. LEVY  
　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 11, 2019.

　　　　　　　　　　　　　　s/Shawna Burns  
　　　　　　　　　　　　　　SHAWNA BURNS  
　　　　　　　　　　　　　　Case Manager